IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUE FRATELLI, INC., individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TARGET CORPORATION, a Minnesota corporation, <br><br> Defendant. | Case No.: 1:13-cv-09336 <br><br> Judge Charles P. Kocoras |

## PLAINTIFF'S SUPPLEMENT TO PLAINTIFF'S PREVIOUSLY FILED EMERGENCY MOTION FOR PROTECTIVE ORDER WITH A REVISED PROPOSED ORDER

Plaintiff, DUE FRATELLI, INC., an Illinois Corporation, through its attorneys, ZIMMERMAN LAW OFFICES, P.C., and CLIFFORD LAW OFFICES, P.C., moves this Honorable Court for entry of a Protective Order for the preservation of evidence, and in support thereof, states as follows:

**Summary of Facts Alleged.**

1. This case involves Defendant's mishandling of 40 million consumers' personally identifiable information, including their names, credit and debit card numbers, card expiration dates, and the three-digit security codes located on the backs of their credit and debit cards (collectively referred to as "PII"), which occurred between approximately November 27, 2013 and December 15, 2013.

2. Defendant, TARGET, acquires customers' personally identifiable information ("PII") when a customer completes a retail transaction using an electronic form of payment, including credit

card or debit card payment.

3. After a customer completes a retail transaction using an electronic form of payment, Defendant, TARGET, acquires, processes, collects, monitors, analyzes, records, utilizes, maintains and otherwise handles the customers' PII, and develops extensive data files pertaining to Defendant's customers for marketing and other business purposes.

4. Defendant, TARGET, utilizes computers, servers, software, hardware, processes, procedures, and a variety of means and methods to acquire, process, collect, monitor, analyze, record, utilize, maintain and otherwise handle the PII, data and databases. None of the aforesaid means or methods are publicly accessible and, upon information and belief, all such means and methods are (or are intended to be) under the exclusive control of Defendant, TARGET and its employees and/or agents.

5. Plaintiff, DUE FRATELLI, INC., an Illinois corporation, suffered damages after Defendant, TARGET, intentionally, willfully, recklessly and/or negligently failed to take precautions necessary to identify, protect and prevent the unauthorized access to and disclosure of personally identifiable information ("PII").

**Relevant Procedural History.**

6. The case was initially filed in state court on December 20, 2013 and a preservation order was entered by the Court, set to expire on January 6, 2014 at 10:15 a.m. The parties were instructed to meet and confer before that time.

7. Plaintiff made several attempts to schedule a meet and confer, however, Defendant removed the case to federal court on December 31, 2013. [Doc #1].

8. On January 3, 2014, Plaintiff filed before this Court an emergency motion for

2

protective order. [Doc #11]. Notably, the preservation order that had been entered in state court was set to expire on January 6, 2013. The parties appeared before this Court on January 6, 2013, at which time an Order was entered requiring the parties to meet and confer before January 10, 2012. [Doc. #14].

**The Meet and Confer.**

9.  On January 8, 2014, the parties met and conferred via teleconference. On behalf of Plaintiff, Attorneys Robert A. Clifford, Thomas A. Zimmerman and Shannon M. McNulty, along with their retained consultants, Aaron Patton (Director of eDiscovery), Dave McCain, CFCE, EnCe, CCME (Vice President, Computer Forensics), and Joe Rooney joined a phone conference with Target's lawyers, including Martin Tulley, who has appeared in this case.

10. During the meet and confer, Defendant articulated that a preservation order is not necessary in this case because Defendant (1) issued "legal holds" to a "vast number" of employees; (2) took forensic images of the systems Target believes were affected by the breach; and (3) maintains that disclosure would hinder the investigation of the occurrence. Defendant also suggested that the cases would be transferred to Multi District Litigation (MDL).

11. Defendant specifically noted their disagreement with items 9(U) and 9 (V) of Plaitniff's motion [Doc. #11], stating that they would never affirmatively create a log and that these items, from their perspective, interfered with law enforcement's investigation.

12. Because Defendant represented that "legal holds" were issued and were sufficient for purpose of preserving potentially relevant evidence, Plaintiff asked for the details of the "legal holds" including for instance, what was "held" and who was subjected to the "hold." Plaintiff asked if Defendant might supply a copy of one such "legal hold" to allay Plaintiff's concerns. Defendant

asserted that they were not obligated to share that information and would not share the information.[1]

13. Plaintiff attempted to re-direct the discussion to the subparagraphs at issue, starting with 9(A). Defendant declined to discuss the subjects raised in the subparagraphs, again reverting to the Defendant's position that no preservation order should be entered.

14. The parties remain at odds as to the necessity of a preservation order. Nevertheless, Plaintiff's counsel has, in good faith, considered the issues raised by Defendant during the meet and confer and submits this supplement with a revised proposed Order, for the Court's consideration.

**Relevant Authority: The Manual for Complex Litigation and the Seventh Circuit Electronic Discovery Committee.**

15. Judicial supervision is most needed and productive early in the litigation, and it may be necessary to take immediate action to preserve evidence. (See Manual for Complex Litigation, Fourth, Federal Judicial Center 2004, (hereinafter "The Manual")§10.11 "Early Identification and Control").

16. As the Court well knows, at the outset of a case, the judge may *sua sponte* initiate special procedures, including "ordering that paper and electronic records, files, and documents and other potential evidence, not be destroyed. . . " (*Id.* at §11.2 "Interim Measures"). In addition, §11.442 "Preservation" in the Manual specifies that the Court "should consider whether to enter an order requiring the parties to preserve and retain documents, files, data and records that may be

---

[1] Though, perhaps, not obligated by rule to supply a copy of a "legal hold," Defendant is obligated to cooperatively meet and confer. Defendant suggests the "legal hold" is a sufficient assurance that all data and potentially related evidence is being properly preserved and, as such, Plaintiff requested further details concerning the legal hold. In requesting the general content of Defendant's "legal hold", Plaintiff's counsel was acting in good faith upon the principals of cooperation advanced by the 7th Circuit Electronic Discovery Commitee's General Principles. (See Principle 1.02, Cooperation) and the Sedona Conference, ("Cooperation does not conflict with the advancement of their clients' interests — it enhances it) (emphasis supplied). The Sedona Conference, *The Sedona Conference Cooperation Proclamation,* 10 Sedona Conf. J. 331, 331 (2009).

relevant to the litigation.[2]

17.     Notwithstanding the entry of preservation and/or protective orders, a party may, on its own, issue a "litigation hold" in connection with a duty to preserve evidence. Of course, the "litigation hold" is not supervised by the Court and is often not a reliable assurance that preservation of potentially relevant evidence is actually occurring. (See *In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, No. 3:12-md-02385-DRH-SCW, Doc. #302.; See also *In re KMART CORPORATION, et al., Debtors*, 371 B.R. 823 (Bankr. ND IL 2007).

18.     The Seventh Circuit Electronic Discovery Committee emphasizes in its "Principles Relating to the Discovery of Electronically Stored Information" the Court's expectation that parties will cooperate, and adhere to several principles that facilitate a frank dialogue regarding ESI, including the issue of requested preservation orders. (See Principle 2.03, Preservation Requests and Orders). As noted by the Committee, "appropriate preservation requests and preservation orders further the goals of these Principles. With these Principles in mind, Plaintiff submits this supplemental memorandum and Revised Proposed Order.

**Argument.**

19.     Plaintiff seeks a protective order for the preservation of certain evidence and artifacts so as to further the investigation of this matter and to protect certain evidence and artifacts from destruction or spoilation.

20.     As Target has conceded, there is a large amount of data at issue in this case, and

---

[2]The Manual cites examples of preservation orders entered in complex multidistrict litigation, including In re Propulsid Prods. Liab. Litig. MDL No. 1355 (E.D. La. Apr. 19 2001) (Pretrial Order No. 10: Production and Preservation of Defendant's Electronic Data), at http://propulsid.laed.uscourts.gov/Orders/order10.pdf. and In re Bridgestone/Firestone, Inc. ATX, ATX II & Wilderness Tires Prods. Liab. Litig., MDL No. 1373 (S.D. Ind. Mar. 15, 2001) (Order Regarding Ford's Preservation of Electronic Data) at http://www.insd.uscourts.gov/Firestone/bf_docs/93730738.pdf.

5

innumerable Target employees, as well as outside vendors and government employees (not subject to Target's control) handling the artifacts and evidence at issue. These conditions, combined with the fact that a highly sophisticated offender who has successfully accessed Target's systems remains at large, warrant entry of a preservation order in this case.

21. Defendant suggests that it's alleged issuance of "legal holds" is sufficient for preservation of potentially relevant evidence. However, Plaintiff does not possess any details as to what is included in the context of Defendant's "legal holds." A legal hold is not a universally defined document, and the process of issuing a legal hold also has great variance amongst corporations. For instance, there is no certification or averment from Target that its auto-delete function referenced while in state court has been de-activated in an effort to preserve potentially relevant evidence. Morever, Target is unwilling to further describe what and/or who is covered by the so-called "legal holds". Additionally, the "legal holds" are subject to the interpretation of the many, many Target employees and vendors that Target concedes are involved in the present handling of potentially relevant evidence. The sheer volume of people handling what is essentially a virtual environment, suggests that merely informal "legal holds" are insufficient and warrant entry of a preservation order.

22. Target claims that it has also taken forensic images of its affected systems, but that again is a shallow assurance of the preservation of all potentially relevant evidence. Target will not identify for Plaintiff what Target considers the "affected systems". Indeed, Target may not yet fully know all systems that were "affected." Target has not, and cannot, aver that all "affected systems" have been identified, and will not discuss that in any level of detail with Plaintiff's counsel. The only way to adequately preserve the information at issue is to enter a preservation order.

23. According to Target's own reports, someone accessed Target's system, and

customers' personal and financial information, for a period of at least nearly three weeks, without any awareness or detection by Target, whatsoever. The individual was able to gather the data for some 40 million Target customers, which is no small task. The Target employees with responsibility for these network and system operations and security did not detect this breach over the course of three weeks. Moreover, even after the breach was discovered, the same employees supplied on a daily basis conflicting information as to what categories of data were actually taken. Now, Target expects that Plaintiffs should rely on these same employees to assure that all potentially relevant evidence is preserved. Indeed, the mere fact that the incident occurred in the first place serves as evidence that Target does not have adequate security measures in place so as to ensure preservation of certain information, and the situation is suited for the Court's intervention vis a vis the entry of a preservation order.

24. Equally important, the individual who accessed Target's system for three weeks without detection is still at large. Even if Target has implemented additional network security measures, which Target has not said, the individual was capable of gaining access to a significant portion of Target's systems, over a significant period of time, and took a significant amount of information for more than 40 million Target customers. Until he or she is caught, the offender is still capable of attempting to gain further access to the Target system. Quite possibly, the offender is a Target employee, with direct access to the relevant systems. After all, one unique component of this occurrence is that the breach allegedly involved the point of sale systems. Regardless, the systems are not necessarily secure at this point, and the only reliable means of preserving what does presently exist is with the entry of a preservation order.

25. Furthermore, Target argues that law enforcement's investigations, or those of states'

attorneys general, will be compromised by entry of a preservation order. That rationale seems contradictory, because most law enforcement investigations would be aided by a preservation order. Nonetheless, the focus of any law enforcement investigation is strictly criminal in nature. The investigation of the Secret Service is focused on the subject data breach that started on or about Black Friday. The Secret Service is not interested in doing a comparative analysis of prior years' Black Friday server traffic. The Secret Service is not investigating Target's in-house, pre-occurrence risk assessments and vulnerability identification, or how many resources, what expertise or what amount of money was devoted by Target to such risk assessments. Additionally, law enforcement is not going back in time with respect to its collection of evidence. That is, Plaintiff, and the class, require a retrospective analysis of certain administrative and operational issues, that are not likely being considered as part of the law enforcement investigations. Nothing in Target's retention policies or its assurance of privacy to customers, as set forth in Target's privacy policy, are part of the law enforcement investigations.

26. In addition, no other regulatory agency oversees what data Target collets about its consumers. Target does not have to report to any authority what data it has collected or how it has handled or mishandled that data. Much of the information for which Plaintiff seeks a preservation order is virtual in its existence and subject only to Target's own whims.

27. Further, without Target discussing or revealing the universe of data or categories of data that exist, neither the Plaintiffs nor the Court can be assured that Target is preserving the potentially relevant evidence.

28. Target has repeatedly stated that is already preserving potentially relevant evidence, so the entry of a preservation order imposes no additional burden, and provides the necessary

8

assurances to Plaintiff and the class.

29. In light of the aforementioned reasons, as well as the supporting authority from the Northern District's local rules and the Seventh Circuit's Electronic Discovery Committee, Plaintiff, DUE FRATELLI, INC., moves this Honorable Court enter a protective order in this matter, requiring that Defendant, TARGET, provide and maintain the safe and secure storage of all artifacts and evidence potentially related to the subject occurrence. Specifically, Plaintiff seeks preservation of the following, subject to the reference comments:

    A.    Any and all reports, supplemental reports, field notes, personal notes, investigation reports/notes, incident reports or other written materials of any kind pertaining to the incident that is the subject of Plaintiff's complaint; **Comment:** These items clearly constitute potentially relevant evidence. The vast number of employees, vendor and government officials that Target states are involved with the post-occurrence activities demand some oversight by the Court, in the form of a preservation order. Defendant's so-called legal hold is inadequate, particularly because Target does not control government officials or vendors. Moreover, Target has already confirmed that it understands its duty to preserve, such that no burden is imposed by entry of a preservation order for this category of information.

    B.    Any servers, computers, disks, tapes, scripts, programs, software, hardware, firewalls, or other tangible items of any type whatsoever, that monitored, displayed, recorded or maintained outbound traffic and/or data, including but not limited to exfiltrated data, relating to in-store retail sales transactions processed with credit and/or debit cards for the period of time between November 26, 2013 and December 15, 2013; **Comment:** These items clearly constitute potentially relevant evidence. The vast number of employees, vendor and government officials that Target states are involved with the post-occurrence activities demand some oversight by the Court, in the form of a preservation order. Defendant's so-called legal hold is inadequate, particularly because Target does not control government officials or, in some instances, vendors. Additionally, because of the "virtual" nature of many items in this paragraph, and the anticipated volume of data, the assurance of a preservation order is appropriate and warranted.

    C.    Any servers, computers, disks, tapes or other tangible items that monitored, displayed, recorded or maintained inbound traffic, outbound traffic and/or

data, including but not limited to exfiltrated data, relating to in-store retail sales transactions processed with credit and/or debit cards for the period of time between: November 15, 2012 and December 25, 2012; November 15, 2011 and December 25, 2011; November 15, 2010 and December 25, 2010; **Comment:** These items clearly constitute potentially relevant evidence. Defendant Defendant's so-called legal hold is inadequate, because of the many people cites as having involvement in post-occurrence activities. Target does not control government officials or vendors. Moreover, as previously explained to counsel for Target, Target's retention policy, unknown to Plaintiff at this time, may cause this data to become inaccessible to Plaintiff. Moreover, with malware and Target's auto-delete function, only a preservation order can adequately protect this information, which is critical to Plaintiff's claims. Law enforcement will not use the prior years' data.

D. Defendant's long-range business plan concerning vulnerabilities, assessments, security systems, and firewalls relating to customer PII and other information about customers/guests acquired during credit and debit card transactions; **Comment:** Not likely to be the subject of any law enforcement investigation. Not accessible from any source other than Defendant.

E. All meeting minutes, recordings, presentations, emails, correspondence or other tangible items, of any kind whatsoever, concerning vulnerabilities, assessments, security systems, and firewalls relating to customer PII and other information about customers/guests acquired during credit and debit transactions; **Comment:** Not likely to be the subject of any law enforcement investigation. Not accessible from any source other than Defendant.

F. Any and all files, records, documents, correspondence, emails, and tangible items, of any kind whatsoever, concerning the TARGET Privacy Policy; **Comment:** Properly part of a -preservation order, as Target has conceded it has auto-delete functions that can be deactivated. This request is very specific, in that it only relates to the Target Privacy Policy.

G. Any and all files, records, documents, correspondence, emails, and tangible items, of any kind whatsoever, concerning any prior data breach, of any type whatsoever, at TARGET; **Comment:** Prior incidents and other similar incidents are standard subject matter in discovery. Again, without knowing Target's retention schedule, these items

H. Any and all materials which Defendant, TARGET, supplied to any law enforcement agency and/or government office in connection with any investigation of the subject occurrence; **Comment: Plaintiff will withdraw this subparagraph,** so as to not interfere with any law enforcement

investigations.

I. Any and all files, records, documents, correspondence, emails, and tangible items, of any kind whatsoever, that Defendant, TARGET, supplied to any financial institutions, in connection with the identification, investigation, notification, and monitoring of the subject occurrence; **Comment:** Target does not independently process credit and debit card transactions, and relevant evidence has been transmitted from Target to various banks. Without a preservation order, these items could be subject to a retention policy that allows for destruction. This information is not likely the subject of any law enforcement or government investigation.

J. For the past five years, any and all documents, files, records, memoranda, correspondence, manuals, emails, notices, policies or communications, of any kind whatsoever, that explain, define, describe or reference, in any way, the criteria, guidelines, rules, or standards for which network, server and/or system access is granted to TARGET employees, including retail, technical, administrative and executive employees, and also including "super users." "Super users" include all employees and/or agents who have all levels of access to TARGET's networks, servers, systems and/or "active directory;" **Comment:** Without a preservation order, these items could be subject to a retention policy that allows for destruction. Alternatively, if employees are terminated, the evidence could change without any record or documentation.

K. For the past five years, the names, titles and contact information of all persons who had access to the "active directory." "Active Directory" refers to all levels of access to TARGET's servers, networks and systems; **Comment:** Without a preservation order, these items could be subject to a retention policy that allows for destruction. Alternatively, if employees are terminated, the evidence could change without any record or documentation.

L. For the past five years, any and all documents, files, records, memoranda, correspondence, manuals, emails, notices, policies or communications, of any kind whatsoever, that explain, define, describe or reference, in any way, the criteria, guidelines, standards, rules and procedures implemented and utilized for instances in which TARGET employees, including retail, technical, administrative and executive employees, and also including "super users," lose access, in whole or in part, to the TARGET networks, servers and systems (i.e., lost credentials, termination, re-assignment); **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

M. For the past five years, any and all technical/IT manuals, guidelines, procedures, rules, documents, files, records, memoranda, correspondence, emails, notices, policies or communications, of any kind whatsoever, that define, describe, or reference, in any way, the steps by TARGET employees or agents to identify and confirm any instance of a data breach; **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

N. For the past five years, any and all technical/IT manuals, guidelines, procedures, rules, documents, files, records, memoranda, correspondence, emails, notices, policies or communications, of any kind whatsoever, that define, describe, or reference, in any way, the steps by TARGET employees or agents to report any instance of a data breach, including but not limited to who is notified, the content of such notification, the timing of notification and the initial remedial measures taken to address any such breach; **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

O. For the past five years, any and all manuals, guidelines, procedures, rules, documents, files, records, memoranda, correspondence, emails, notices, policies or communications, of any kind whatsoever, that define, describe, or reference, in any way, the training supplied to TARGET employees or agents in connection with training on security, loss prevention and privacy matters, including such training supplied in relation to sales transactions and identity theft; **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

P. For the past five years, any and all documentation and the complete associated files concerning any data breaches of TARGET customer data or identity theft of a TARGET customer/guest; **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

Q. For the past ten years, by year, the complete TARGET budget, including expense sheets, financial reports, operating expenditures, audits and any other component of the budget that references, in any way, line items and expenditures allocated or designated for technical and security issues, and also including but not limited to the allocated personnel and equipment attributed to technical and security issues; **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

The ten years is necessary, so that Plaintiff's expert can have sufficient data to analyze and comply with Daubert with respect to a basis for opinions.

R. For the past five years, any document or tangible item, that sets forth the information security requirements and the responsibilities of TARGET employees or agents for implementing and administering those requirements; **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

S. For the past five years, any document or tangible items that sets forth or references the authorization process for procuring computers, servers, network administration, hardware, software, mobile devices or any equipment used to process electronic transactions in connection with retail sales; and, **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

T. For the past five years, any document or tangible items that constitutes or refers to any independent information security assessment and/or review. **Comment:** This information is not likely the subject of any law enforcement or government investigation. This information is likely the subject of a retention policy and, therefore, subject to destruction.

In addition, Plaintiff requests the Court's protective order require that Defendant must:

U. Maintain a log of any person or entity that conducts any visual inspection of evidence in connection with cause and original analysis, to include the person's name, date, time, and a description of what was inspected.
**Comment:** This was originally proposed by Judge Kennedy in state court. With the potential for entry of an Order that preserves the above categories of information, and so as to avoid any interference with law enforcement, in good faith, **Plaintiff withdraws this request**.

V. Refrain from any testing, disassembly, alteration, modification, and/or destructive inspection(s) of the subject artifacts and evidence, until further notice; and, **Comment:** With the potential for entry of an Order that preserves the above categories of information, and so as to avoid any interference with law enforcement, in good faith, **Plaintiff withdraws this request.**

W. Prevent any person or entity from removing or relocating any of the subject artifacts or evidence, until further notice. **Comment:** With the potential for entry of an Order that preserves the above categories of information, and so as to avoid any interference with law enforcement, in good faith, **Plaintiff**

**withdraws this request.**

WHEREFORE, Plaintiff respectfully requests that the Court enter a protective order in this matter to preserve certain evidence and artifacts (draft protective order attached hereto as Exhibit A), and grant any further relief the Court deems just under the circumstances

        /s/Shannon M. McNulty
        One of the Attorney for Plaintiffs

| | |
|---|---|
| Thomas Zimmerman | Robert A. Clifford |
| Adam M. Tamburelli | Shannon M. McNulty |
| Frank J. Stretz | CLIFFORD LAW OFFICES, P.C. |
| ZIMMERMAN LAW OFFICES, P.C. | 120 N. LaSalle Street, 31st Floor |
| 77 West Washington, Suite 1120 | Chicago, Illinois 60601 |
| Chicago, Illinois 60602 | 312/899-9090 |
| 312/440-0020 | Firm I.D. No.: 32640 |
| Firm I.D. No. 34418 | |

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUE FRATELLI, INC., individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, a Minnesota corporation,<br><br>Defendant. | Case No.: 1:13-cv-09336<br><br>Judge Charles P. Kocoras |

## REVISED PROPOSED ORDER

This matter coming on for Plaintiff's motion for a protective order, due notice given, the parties present, the court fully advised in the premises, with the court finding that this motion is of an emergency nature based upon the scope of the occurrence and nature of the items sought to be preserved, based upon the representation of counsel that the Defendant's common law duty is insufficient, and based upon the expiration of the protective order entered by the Circuit Court of Cook County, with the court further finding that there is good cause for the entry of this order,

It Is Hereby Ordered:

Defendant TARGET CORPORATION ("TARGET") shall provide and maintain the safe and secure storage of all artifacts and evidence related to the subject occurrence, including:

    A.    Any and all reports, supplemental reports, field notes, personal notes, investigation reports/notes, incident reports or other written materials of any kind pertaining to the incident that is the subject of Plaintiff's complaint;

    B.    Any servers, computers, disks, tapes, scripts, programs, software, hardware, firewalls, or other tangible items of any type whatsoever, that monitored,

displayed, recorded or maintained outbound traffic and/or data, including but not limited to exfiltrated data, relating to in-store retail sales transactions processed with credit and/or debit cards for the period of time between November 26, 2013 and December 15, 2013;

C. Any servers, computers, disks, tapes or other tangible items that monitored, displayed, recorded or maintained inbound traffic, outbound traffic and/or data, including but not limited to exfiltrated data, relating to in-store retail sales transactions processed with credit and/or debit cards for the period of time between: November 15, 2012 and December 25, 2012; November 15, 2011 and December 25, 2011; November 15, 2010 and December 25, 2010;

D. Defendant's long-range business plan concerning vulnerabilities, assessments, security systems, and firewalls relating to customer PII and other information about customers/guests acquired during credit and debit card transactions;

E. All meeting minutes, recordings, presentations, emails, correspondence or other tangible items, of any kind whatsoever, concerning vulnerabilities, assessments, security systems, and firewalls relating to customer PII and other information about customers/guests acquired during credit and debit transactions;

F. Any and all files, records, documents, correspondence, emails, and tangible items, of any kind whatsoever, concerning the TARGET Privacy Policy;

G. Any and all files, records, documents, correspondence, emails, and tangible items, of any kind whatsoever, concerning any prior data breach, of any type whatsoever, at TARGET;

H. Any and all files, records, documents, correspondence, emails, and tangible items, of any kind whatsoever, that Defendant, TARGET, supplied to any financial institutions, in connection with the identification, investigation, notification, and monitoring of the subject occurrence;

I. For the past five years, any and all documents, files, records, memoranda, correspondence, manuals, emails, notices, policies or communications, of any kind whatsoever, that explain, define, describe or reference, in any way, the criteria, guidelines, rules, or standards for which network, server and/or system access is granted to TARGET employees, including retail, technical, administrative and executive employees, and also including "super users." "Super users" include all employees and/or agents who have all levels of access to TARGET's networks, servers, systems and/or "active directory;"

J. For the past five years, the names, titles and contact information of all persons who had access to the "active directory." "Active Directory" refers to all levels

of access to TARGET's servers, networks and systems;

K. For the past five years, any and all documents, files, records, memoranda, correspondence, manuals, emails, notices, policies or communications, of any kind whatsoever, that explain, define, describe or reference, in any way, the criteria, guidelines, standards, rules and procedures implemented and utilized for instances in which TARGET employees, including retail, technical, administrative and executive employees, and also including "super users," lose access, in whole or in part, to the TARGET networks, servers and systems (i.e., lost credentials, termination, re-assignment);

L. For the past five years, any and all technical/IT manuals, guidelines, procedures, rules, documents, files, records, memoranda, correspondence, emails, notices, policies or communications, of any kind whatsoever, that define, describe, or reference, in any way, the steps by TARGET employees or agents to identify and confirm any instance of a data breach;

M. For the past five years, any and all technical/IT manuals, guidelines, procedures, rules, documents, files, records, memoranda, correspondence, emails, notices, policies or communications, of any kind whatsoever, that define, describe, or reference, in any way, the steps by TARGET employees or agents to report any instance of a data breach, including but not limited to who is notified, the content of such notification, the timing of notification and the initial remedial measures taken to address any such breach;

N. For the past five years, any and all manuals, guidelines, procedures, rules, documents, files, records, memoranda, correspondence, emails, notices, policies or communications, of any kind whatsoever, that define, describe, or reference, in any way, the training supplied to TARGET employees or agents in connection with training on security, loss prevention and privacy matters, including such training supplied in relation to sales transactions and identity theft;

O. For the past five years, any and all documentation and the complete associated files concerning any data breaches of TARGET customer data or identity theft of a TARGET customer/guest;

P. For the past ten years, by year, the complete TARGET budget, including expense sheets, financial reports, operating expenditures, audits and any other component of the budget that references, in any way, line items and expenditures allocated or designated for technical and security issues, and also including but not limited to the allocated personnel and equipment attributed to technical and security issues;

Q. For the past five years, any document or tangible item, that sets forth the information security requirements and the responsibilities of TARGET

employees or agents for implementing and administering those requirements;

R. For the past five years, any document or tangible items that sets forth or references the authorization process for procuring computers, servers, network administration, hardware, software, mobile devices or any equipment used to process electronic transactions in connection with retail sales; and,

S. For the past five years, any document or tangible items that constitutes or refers to any independent information security assessment and/or review.


***So Ordered.***

_____